```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - X
                              :
UNITED STATES OF AMERICA      :    INFORMATION
                              :
    - v. -                    :    22 Cr. ____
                              :
DAVID STONE,                  :
                              :
          Defendant.          :
                              :
- - - - - - - - - - - - - - - X
```

$^{5}$$^{3}$$^{2}$ CRIM 510

**COUNT ONE**
(Securities Fraud)

The United States Attorney charges:

Overview of the Fraudulent Scheme

1.    From at least in or about 2020 up to and including at least in or about March 2022, DAVID STONE, the defendant, deceptively and without authority accessed the computing system of an investment-advice company ("Advisor-1") and used that unauthorized access to view confidential information about Advisor-1's stock recommendations before Advisor-1 published those recommendations to its paying subscribers. STONE then traded based on that pre-publication information, enriching himself, and distributed that information to others in anticipation that they would likewise place timely, profitable trades based on it.    In total, STONE and others placed over 50 securities trades based on the stolen information from Advisor-1 and made at least approximately $3.5 million in illicit profits.

## Advisor-1's Stock Recommendation Services

2. At all relevant times to this Information, Advisor-1 offered services that members had to pay for, including two particular services ("Service-1" and "Service-2," and together, the "Services"), which were marketed as providing market-beating stock recommendations. On a periodic basis, Advisor-1 announced stock recommendations to paying subscribers of the Services. Advisor-1 announced stock recommendations to subscribers of Service-1 at approximately 1:00pm Eastern time every other Thursday, and Advisor-1 announced stock recommendations to subscribers of Service-2 at approximately 11:00am Eastern time on alternating Thursdays, such that, between the two Services, Advisor-1 announced stock recommendations to subscribers of both services every Thursday. Advisor-1 announced the stock recommendations to its paying subscribers through various means, including putting those recommendations in emails sent to subscribers, posting those recommendations on a part of Advisor-1's website that only subscribers could access, and having Advisor-1 representatives announce those recommendations during online events that only subscribers could attend.

3. Before announcing stock recommendations to its paying subscribers, Advisor-1 considered those recommendations to be confidential and took steps to keep them confidential. Relatedly,

2

Advisor-1 took steps to prohibit its employees from trading in securities underlying forthcoming recommendations.

4. The announcement of an Advisor-1 stock recommendation typically led to a higher closing price for the recommended stock as compared to the prior day's closing price. For example, on or about August 26, 2021, Advisor-1 recommended CrowdStrike Holdings, Inc., which trades on NASDAQ under the "CRWD" ticker symbol. On the day before the announcement, CRWD closed at $270.00; on the day of the announcement, CRWD closed at $278.77—a 3.25% increase. On occasion, recommended stocks experienced price increases of more than 8% as compared to the prior day's closing price.

STONE Deceptively Accessed Advisor-1's Computing System

5. At all relevant times to this Information, DAVID STONE, the defendant, was an information technology ("IT") professional who, among other things, provided IT support for businesses via remote access to their computing systems. In or about 2020, using credentials for Advisor-1's computing system created for another user ("User-1"), which credentials Advisor-1 did not furnish to STONE or authorize STONE to use, STONE gained access to Advisor-1's computing system. In so doing, STONE caused Advisor-1's employees to believe that the site was being accessed by User-1, who was authorized to access it, rather than STONE, who was not authorized to do so.

6.    The deceptive access achieved by DAVID STONE, the defendant, enabled him to view certain information stored within Advisor-1's content management system, including information regarding forthcoming publications of stock recommendations by Advisor-1.  As a result, STONE was able to learn of Advisor-1's stock recommendations before Advisor-1 announced those recommendations to its paying subscribers and the recommendations became public.

<u>STONE Traded on Advisor-1's Pre-Publication Information  and Shared the Information with Tipee-1 for Tipee-1 to Trade</u>

7.    Between in or about 2020 and in or about March 2022, DAVID STONE, the defendant, used the pre-publication information he deceptively misappropriated from Adviser-1 to engage in equities and options trading for his benefit and for the benefit of certain of his family members.

8.    In addition to using Advisor-1's pre-publication information to profit personally, DAVID STONE, the defendant, also gave Advisor-1's information to a friend ("Tipee-1"), so that Tipee-1 could place timely, profitable trades in the underlying securities.

9.    On or about January 16, 2021, DAVID STONE, the defendant, summarized the terms by which STONE would provide information to Tipee-1, including steps they would take to hide their scheme. Among other things, STONE acknowledged that "what we are doing

could be considered insider trading," and accordingly, he recommended that Tipee-1 "[d]o other trades besides just what I tell you," explaining, "If all your trades are up 5x and you never make a loosing [sic] trade it may call attention of regulators."

10. Between on or about January 20, 2021 and on or about March 17, 2022, on approximately 45 different days, DAVID STONE, the defendant, sent Tipee-1 emails providing stock names and/or ticker symbols ahead of Advisor-1 announcements of stock recommendations to its paying subscribers. To send those emails, STONE often used "confidential mode"—a feature of the email service he used designed to help ensure that an email is read only by its intended recipient.

11. By in or about late March 2022, DAVID STONE, the defendant, and Tipee-1 had used Advisor-1's pre-publication information to place over 50 securities trades based on stolen information from Advisor-1. STONE's and Tipee-1's trading proved extremely profitable. The table below depicts the Advisor-1 announcements ahead of which STONE, Tipee-1, or both, traded and the gross gains they obtained.

| Date of Advisor-1 Announcement | Issuer Stock Symbol | Stone Gross Gains or Loss | Tipee-1 Gross Gains or Loss |
|---|---|---|---|
| 11/12/20 | RGEN | $3,008 | |
| 11/19/20 | ZBRA | $42,394 | |
| 11/25/20 | CHGG | $9,972 | |

| Date of Advisor-1 Announcement | Issuer Stock Symbol | Stone Gross Gains or Loss | Tipee-1 Gross Gains or Loss |
|---|---|---|---|
| 12/3/20 | LMND | $57,949 | |
| 12/17/20 | FUBO | $55,738 | |
| 12/17/20 | COUP | $308,572 | |
| 1/14/21 | W | $548,789 | $59,762 |
| 1/21/21 | ABNB | $140,635 | $33,066 |
| 1/28/21 | MRNA | $48,951 | $16,036 |
| 2/11/21 | AXON | $207,103 | $19,849 |
| 2/18/21 | IDXX | $188,673 | $46,470 |
| 2/25/21 | SNBR | $60,728 | $5,561 |
| 3/11/21 | TDOC | $9,349 | $25,802 |
| 3/18/21 | LRCX | ($34,149) | $17,000 |
| 3/25/21 | GDRX | $18,593 | $13,936 |
| 4/1/21 | TEAM | ($29,457) | |
| 4/8/21 | PLNT | $58,079 | $6,010 |
| 4/15/21 | TTC | $305,435 | $12,375 |
| 4/22/21 | CPNG | $43,694 | $18,099 |
| 5/20/21 | AMZN | $2,870 | $4,722 |
| 5/27/21 | SNOW | ($7,241) | $32,342 |
| 6/10/21 | DDOG | $43,093 | ($5,450) |
| 6/17/21 | LULU | $48,416 | $58,590 |
| 6/24/21 | NET | ($776) | $43,740 |

| Date of Advisor-1 Announcement | Issuer Stock Symbol | Stone Gross Gains or Loss | Tipee-1 Gross Gains or Loss |
|---|---|---|---|
| 7/8/21 | PTON | ($26,601) | ($1,370) |
| 7/15/21 | DOCU | $94,142 | $22,977 |
| 7/22/21 | BMBL | $32,673 | $22,261 |
| 8/5/21 | UPST | $109,402 | ($1,292) |
| 8/12/21 | NET | $41,055 | $48,510 |
| 8/19/21 | INTU | $74,180 | $32,387 |
| 8/26/21 | CRWD | $37,340 | $29,590 |
| 9/2/21 | SNOW | $135,587 | $67,912 |
| 9/9/21 | RBLX | $161,800 | $182,174 |
| 9/16/21 | ASAN | $104,272 | $126,495 |
| 9/23/21 | UPST | ($23,864) | $23,546 |
| 10/7/21 | SHOP | $91,875 | $82,955 |
| 10/14/21 | CRWD | $21,900 | $59,006 |
| 10/21/21 | DOCU | $89,725 | $107,608 |
| 10/28/21 | CHWY | $209,900 | $865,219 |
| 11/4/21 | PATH | $138,686 | $128,855 |
| 11/11/21 | NVCR | $41,392 | $214,916 |
| 11/18/21 | U | $94,565 | $212,614 |
| 11/24/21 | TASK | $40,965 | $115,268 |
| 12/2/21 | TWLO | ($57,080) | $26,186 |
| 12/2/21 | DOCN | ($26,828) | ($111,871) |

| Date of Advisor-1 Announcement | Issuer Stock Symbol | Stone Gross Gains or Loss | Tipee-1 Gross Gains or Loss |
|---|---|---|---|
| 12/16/21 | DOCS | ($12,238) | |
| 12/16/21 | ROKU | $80,196 | $155,131 |
| 1/6/22 | CFLT | $19,184 | $22,555 |
| 1/13/22 | MELI | ($56,309) | $17,610 |
| 1/20/22 | SPOT | $39,950 | ($162,845) |
| 1/27/22 | SQ | ($89,359) | $32,371 |
| 2/3/22 | ABNB | ($3,516) | $7,028 |
| 2/10/22 | DOCU | $37,234 | ($3,108) |
| 2/17/22 | VRTX | ($5,420) | $478 |
| 2/24/22 | DDOG | $6,120 | $2,900 |
| 3/10/22 | TREX | $2,135 | $50 |
| 3/17/22 | GRMN | $68,898 | |
| 3/24/22 | MQ | $7,895 | $600 |

12.   DAVID STONE, the defendant, traded on material nonpublic information in brokerage accounts held in his own name, realizing gains of at least $2,883,800.   STONE also traded on material nonpublic information in brokerage accounts held in his wife's name and in brokerage accounts held in his father's name, realizing additional gains.  Across all accounts, STONE realized gains of at least $3.5 million by trading on material nonpublic information.

13.   On multiple occasions, DAVID STONE, the defendant, and Tipee-1 traded in stocks listed on national securities exchanges

located in New York, New York, such as the New York Stock Exchange
and NASDAQ.

14. On multiple occasions, DAVID STONE, the defendant,
traded in the securities of an issuer with a class of securities
registered under Section 12 of the Securities Exchange Act of 1934
and that was required to file reports under Section 15(d) of the
Securities Exchange Act of 1934.

### Statutory Allegations

15. From at least in or about 2020 up to and including at
least in or about March 2022, in the Southern District of New York
and elsewhere, DAVID STONE, the defendant, willfully and
knowingly, directly and indirectly, by use of the means and
instrumentalities of interstate commerce and of the mails, and the
facilities of national securities exchanges, used and employed
manipulative and deceptive devices and contrivances, in connection
with the purchase and sale of securities, in violation of Title
17, Code of Federal Regulations, Section 240.10b-5, by (a)
employing devices, schemes, and artifices to defraud; (b) making
and causing to be made untrue statements of material facts and
omitting to state material facts necessary in order to make the
statements made, in light of the circumstances under which they
were made, not misleading; and (c) engaging in acts, practices,
and courses of business which operated and would operate as a fraud
and deceit upon other persons, to wit, STONE, deceptively and

9

without authority, accessed and misappropriated pre-publication stock recommendations from Advisor-1 and converted that information to his own use by trading on it and by distributing it to others in anticipation that they would trade.

(Title 15, United States Code, Sections 78j(b) and 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5; and
Title 18, United States Code, Section 2.)

## FORFEITURE ALLEGATION

16. As a result of committing the offense alleged in Count One of this Information, DAVID STONE, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28 United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense that the defendant personally obtained, including but not limited to (a) a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense and (b) securities purchased or obtained through the commission of said offense.

## Substitute Assets Provision

17. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

10

b.   has been transferred or sold to, or deposited with, a third person;

c.   has been placed beyond the jurisdiction of the Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

DAMIAN WILLIAMS
United States Attorney

11

Form No. USA-33s-274 (Ed. 9-25-58)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA**

**v.**

**DAVID STONE,**

**Defendant.**

**INFORMATION**

22 Cr. ____

(15 U.S.C. §§ 78j(b) and 78ff;
17 C.F.R. § 240.10b-5; and
18 U.S.C. § 2.)

DAMIAN WILLIAMS

United States Attorney