M9NAASTOP                    Plea

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                          22 CR 510 (MKV)

5    DAVID STONE,

6                 Defendant.

7    ------------------------------x

8                                          New York, N.Y.
                                           September 23, 2002
9                                          10:00 a.m.

10
     Before:
11
                        HON. MARY KAY VYSKOCIL,
12
                                           District Judge
13

14                          APPEARANCES

15   DAMIAN WILLIAMS
          United States Attorney for the
16        Southern District of New York
     ANDREW M. THOMAS
17        Assistant United States Attorney

18   THOMAS MONAGHAN
     AARON MYSLIWIEC
19        Attorneys for Defendant Stone

20

21

22

23

24

25

                   SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

M9NAASTOP                    Plea

```
 1              (Case called)

 2              THE COURT:  Good morning.

 3              Please, be seated, everyone.

 4              MR. THOMAS:  Good morning.

 5              Andrew Thomas, on behalf of the United States

 6              THE COURT:  All right.  Good morning, Mr. Thomas.

 7              MS. MONAGHAN:  Good morning, your Honor.

 8              Tom Monaghan, on behalf of Mr. Stone.

 9              Thank you.

10              THE COURT:  Good morning, Mr. Monaghan.

11              MR. MYSLIWIEC:  Good morning.

12              Aaron Mysliwiec, on behalf of Mr. Stone, as well.

13              THE COURT:  You are Mr. Stone?

14              THE DEFENDANT:  Yes, I am.

15              THE COURT:  All right.  Good morning.  Please, be

16      seated.

17              And good morning to our court reporter.

18              Thank you for being here.

19              All right.  Well, I should introduce myself.

20              Good morning, everyone.  I am Judge Vyskocil and this

21      case has been assigned to me.  We're here this morning for a

22      plea by Mr. Stone.

23              So, let me just ask before we get started, Mr. Stone,

24      do you speak and understand English clearly?

25              THE DEFENDANT:  Yes, I do.
```

M9NAASTOP                    Plea

1          THE COURT:  It's your native language?

2          THE DEFENDANT:  Yes.

3          THE COURT:  All right.  And let me ask the government,

4    Mr. Thomas, are there any victims under the Crime Victims Act

5    and has notice been provided?

6          MR. THOMAS:  There are, your Honor.  And notice has

7    been made.

8          THE COURT:  All right.  Thank you.

9          All right.  So, I am informed that the defendant has

10   an application to waive indictment and pursuant to an agreement

11   with the government, enter a plea of guilty to Count One in the

12   information in this case; is that correct?

13         MS. MONAGHAN:  It is, your Honor.

14         THE COURT:  All right.  Thank you.

15         For the record Count One charges the defendant with

16   securities fraud in violation of Title 15 U.S.C. Section 78J

17   (b) and 78FF, like "frank".

18         Title 17 Code of Federal Regulations, Section 240.10

19   B-5, and Title 18 U.S.C. Section 2.

20         In particular, the government alleges that from at

21   least in or about 2020 up to and including at least in or about

22   March of 2022, Mr. Stone deceptively and without authority

23   accessed the computing system of an investment advice company

24   and used that unauthorized access to view confidential

25   information about that company's stock recommendations before

1    the company published those recommendations to its paying

2    subscribers.

3              Mr. Stone then traded based on that prepublication

4    information, enriching himself and distributed that information

5    to others in anticipation that they would likewise place timely

6    profitable trades based on the information.  In total,

7    Mr. Stone and others placed over 50 securities trades based on

8    the stolen information from the company and made at least

9    approximately $3.5 million in elicit profits.

10             Is that accurate, counsel?

11             MS. MONAGHAN:  Yes, your Honor.

12             THE COURT:  All right.  I have been given a copy of an

13   agreement between the parties.  I have today, we have been

14   given a signed copy.

15             So, let me first ask the counsel for each side, is

16   what was handed to my courtroom deputy today the same as what

17   was previously provided to the Court?

18             MR. THOMAS:  Yes, your Honor.

19             MS. MONAGHAN:  We concur, yes, your Honor.

20             THE COURT:  No changes have been made?

21             MR. THOMAS:  Not other than the signatures, your

22   Honor.

23             MS. MONAGHAN:  Agreed.

24             THE COURT:  Thank you.

25             So, I will mark that agreement as "Government Exhibit

M9NAASTOP                    Plea

1    One".

2           Now, just for the record, that is a letter on the

3    letterhead of the United States Department of Justice, dated

4    September 19, 2022, addressed to Thomas Monaghan and Aaron

5    Mysliwiec in reference to United States against David Stone, 22

6    CR, with the case number to be filled in.  It's a seven page

7    letter.  And we'll talk about the substance of it in a little

8    while.  It attaches a proposed forfeiture order and a proposed

9    restitution order.  And as I say, we'll turn to the substance

10   of that in a few moments.

11          All right.  Mr. Stone, before accepting any plea of

12   guilty from you, there are a number of questions that I must

13   ask you while you are under oath to assure myself that your

14   plea is a vailed plea.  I may at times cover a point more than

15   once and I may cover matters that were addressed in various

16   forms or agreements that you may have signed.  If I do that, I

17   am doing so because it's very important that you understand

18   what's happening here today.  So, in that regard if you don't

19   understand something that I'm saying to you or you have a

20   question, please, say so and I'll either try to clarify the

21   question or if you wish, you may speak to your attorney.

22          You can speak to your attorney at any point during

23   this proceeding.  You just need to let me know that you wish to

24   do that.  All right?

25          THE DEFENDANT:  I understand, your Honor.

1       THE COURT:  You'll let me know if you need to talk to

2   your lawyer or you don't understand something, correct?

3       THE DEFENDANT:  I will.

4       THE COURT:  All right.  So, Ms. Dempsey, would you

5   please administer the oath to Mr. Stone.

6       (Defendant David Stone sworn)

7       THE COURT:  All right.  Mr. Stone, do you understand

8   that you have now just solemnly promised to tell the truth and

9   that if you answer any of my questions falsely, your false or

10  untrue answers may later be used against you in another

11  prosecution for surgery or making a false statement.

12      Do you understand that?

13      THE DEFENDANT:  I understand.

14      THE COURT:  Can you tell me, sir, how old are you?

15      (Pause)

16      THE COURT:  Is that a difficult question?

17      THE DEFENDANT:  Thirty-seven.

18      THE COURT:  What's the issue, sir?

19      THE DEFENDANT:  It changes every year.

20      THE COURT:  Serious?  This is not a joke, sir.  You

21  understand that, right?

22      THE DEFENDANT:  I understand.  I just want to make

23  sure I tell you the right answer.  Thirty-seven.

24      THE COURT:  Pull the microphone closer in front of

25  Mr. Stone's mouth, please.

M9NAASTOP                    Plea

1            Thank you.

2            How far did you go in school, sir?

3            THE DEFENDANT:  I graduated from college.

4            THE COURT:  And you've told me you do speak and

5    understand English perfectly clearly.

6            THE DEFENDANT:  Yes.

7            THE COURT:  Are you a citizen of the United States?

8            THE DEFENDANT:  Yes, I am.

9            THE COURT:  Were you born here or were you a

10   naturalized citizen?

11           THE DEFENDANT:  I was born here.

12           THE COURT:  Are you now or have you recently been

13   under the care of a medical doctor?

14           THE DEFENDANT:  No.

15           THE COURT:  Are you now or have you recently been

16   under the care of a mental health professional?

17           THE DEFENDANT:  No, your Honor.

18           THE COURT:  Have you ever been treated or hospitalized

19   for any mental illness?

20           THE DEFENDANT:  No, I haven't.

21           THE COURT:  Have you ever been treated or hospitalized

22   for any type of addition, including addiction to drugs or to

23   alcohol?

24           THE DEFENDANT:  No, I haven't.

25           THE COURT:  Have you ever been addicted to drugs or

M9NAASTOP                          Plea

1    alcohol?

2              THE DEFENDANT:  No, I haven't.

3              THE COURT:  In the past 24 hours, have you taken any

4    drugs, any medicine, any pills, whatsoever?

5              THE DEFENDANT:  No, I haven't.

6              THE COURT:  Have you had in the last 24 hours any

7    alcohol to drink?

8              THE DEFENDANT:  No.

9              THE COURT:  Is your mind clear today?

10             THE DEFENDANT:  My mind is clear.

11             THE COURT:  Do you understand what we're doing today?

12             THE DEFENDANT:  I understand.

13             THE COURT:  All right.  Are you feeling well today

14   physically?  And by that, I mean are you healthy?

15             THE DEFENDANT:  I feel well.

16             THE COURT:  And are you represented by consel?

17             THE DEFENDANT:  Yes, I am.

18             THE COURT:  Who is your counsel?

19             THE DEFENDANT:  Tom Monaghan and Aaron Mysliwiec.

20             THE COURT:  Are you satisfied with your counsel?

21             THE DEFENDANT:  I am.

22             THE COURT:  Do either counsel have any doubt as to

23   Mr. Stone's competence to enter a plea today?

24             MR. THOMAS:  No, your Honor.

25             MS. MONAGHAN:  Not at all, your Honor.

1          Thank you.

2          THE COURT:  All right.  Mr. Stone, your attorney has

3    informed me that you wish to enter a plea of guilty to Count

4    One of the information in this case.  Is that in fact what you

5    wish to do today?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  And before you do that, you would need to

8    waive indictment.

9          Is that what you wish to do?

10          THE DEFENDANT:  Yes, I do.

11          THE COURT:  Have you fully discussed your case with

12    your lawyer including the charge to which you intend to enter a

13    plea of guilty and any possible defenses to that charge?

14          THE DEFENDANT:  Yes, I have.

15          THE COURT:  Have you discussed the consequences of

16    entering a plea of guilty with your lawyers?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  Are you satisfied with your lawyers, with

19    their advice to you in connection with this case and in

20    particular, today's proceeding?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  All right.  I do find on the basis of

23    Mr. Stone's answers to my questions and my observation of his

24    demeanor that he is fully competent to enter an informed plea

25    at this time.

M9NAASTOP                    Plea

1          Now, just one moment, please.

2          (Pause)

3          THE COURT:  All right.  As I just discussed with you,

4    Mr. Stone, I am advised that you wished to waive indictment in

5    this case and to plead to the information, a copy of which has

6    been provided to me.

7          Is that in fact what you intend to do?

8          THE DEFENDANT:  That's correct, your Honor.

9          THE COURT:  All right.  My courtroom deputy --

10         Do you have a copy of the waiver of indictment form

11   that you handed up to my courtroom deputy earlier today?

12         THE DEFENDANT:  I have a copy.

13         THE COURT:  All right.  I will mark that as Court

14   Exhibit One.

15         And, Ms. Dempsey, if you would hand me a copy.

16         Thank you.

17         Does your signature appear on this waiver of

18   indictment form, Mr. Stone?

19         THE DEFENDANT:  Yes.

20         THE COURT:  And before you signed this document did

21   you discuss it with your lawyer?

22         THE DEFENDANT:  Yes, I did.

23         THE COURT:  Did he explain it to you?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Do you understand what you are doing by

M9NAASTOP                    Plea

1    having signed this form?

2              THE DEFENDANT:  I understand, your Honor.

3              THE COURT:  Do you understand that you're under no

4    obligation to waive indictment?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Do you understand that if you do not waive

7    indictment and the government wants to prosecute you, it would

8    have to present the case to a grand jury which may or may not

9    indictment you?

10             THE DEFENDANT:  I understand, your Honor.

11             THE COURT:  Do you understand that by waiving

12   indictment you are giving up your right to have this case

13   presented to a grand jury?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Do you understand what a grand jury is?

16             THE DEFENDANT:  I do.

17             THE COURT:  Do you understand that a grand jury is a

18   body made up of 23 people of whom 16 must be present in order

19   to conduct any business and that you could not be charged

20   unless 12 members of the grand jury vote for indictment based

21   on a finding of probable cause.

22             Do you understand all of that?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  And you've discussed that with you are

25   your lawyer?

M9NAASTOP                    Plea

1          THE DEFENDANT:  We did.

2          THE COURT:  All right.  Does either counsel know of

3    any reason that I shouldn't find the defendant knowingly and

4    voluntarily waives his right to be indicted by a grand jury?

5          MR. THOMAS:  No, your Honor.

6          MS. MONAGHAN:  No, your Honor.

7          THE COURT:  All right.  I do find that Mr. Stone

8    understands his right to be indicted by a grand jury and is

9    knowingly and voluntarily waiving that right to be indicted by

10   a grand jury.  I therefore authorize the filing of the

11   information in this case.

12          Ms. Dempsey, I am going to hand back to you the

13   original waiver.

14          All right.  I also want to just put on the record

15   since this is the first time that you are all appearing before

16   me, a directive to the government with respect to discovery in

17   this matter.  Under Rule 5F I'm obligated to put on the record

18   the first time you are before me a statement about the

19   government's obligations regarding discovery and I will enter a

20   written order on the record with respect to this issue.  I do

21   understand that pursuant to the plea agreement the defendant

22   may be waiving its right to discovery but, nonetheless, I do

23   remind the government of its obligation to comply under Brady

24   against Maryland and its progeny with disclosure to the defense

25   of all information whether admissible or not that is favorable

1    to the defendant, material either to guilt or to punishment and

2    known to the prosecution.

3            Possible consequences for noncompliance may include

4    dismissal of individual charges or of the entire case,

5    exclusion of evidence and professional discipline or court

6    sanctions on any attorney responsible for violating the

7    government's discovery obligations.

8            As I say, I will enter a written order if it hasn't

9    already been entered by the magistrate judge in this case

10   describing this obligation and possible consequences of failing

11   to meet it.  and I direct the prosecution to review and comply

12   with its obligations.

13           Now, as I say, I understand from the plea agreement

14   that the defendant may be waiving his right to receive

15   discovery.  And so that may address the government's

16   obligations further, but, nonetheless, I want the government to

17   confirm to me that it understands what its obligations are and

18   that it will fulfill them consistent with both this order and

19   whatever agreement it may have entered into with the defendant.

20           MR. THOMAS:  Yes, your Honor, we so confirm.

21           THE COURT:  All right.  Thank you.

22           All right.  So, let me turn then to a few more

23   questions that I need to address with you, Mr. Stone, before we

24   actually take your plea in this case.  Before I accept any plea

25   I need to address with you that certain questions that will

1    satisfy me that you wish to plead guilty because you are in

2    fact guilty, and that you fully understand your rights and the

3    consequences of entering a plea.

4           So, I want to begin by describing to you certain

5    rights that you have under the Constitution and the laws of the

6    United States.  You will be giving you these rights if you

7    enter a plea of guilty.  So, please, listen very carefully.  If

8    you do not understand something I am saying or describing,

9    please, stop me and either I or your attorney will explain it

10   to you more fully.

11          Will you do that?

12          THE DEFENDANT:  I will, your Honor.

13          THE COURT:  First, under the Constitution and laws of

14   the United States, you have the right to a speedy and a public

15   trial by a jury on the charges against you which are contained

16   in the information.

17          Do you understand that?

18          THE DEFENDANT:  Understand, your Honor.

19          THE COURT:  Do you understand that you have the right

20   to plead not guilty and to continue to plead not guilty to the

21   charge in the information?

22          THE DEFENDANT:  I understand, your Honor.

23          THE COURT:  Do you understand that if there were a

24   trial you would be presumed innocent and the government would

25   have to prove you guilty by competent evidence and beyond a

M9NAASTOP                    Plea

1   reasonable doubt?

2           Do you understand that?

3           THE DEFENDANT:  I understand, your Honor.

4           THE COURT:  Do you understand that you would not have

5   to prove that you were innocent at trial?

6           THE DEFENDANT:  I understand.

7           THE COURT:  Do you understand that if there were a

8   trial, a jury made up of 12 people selected from this district

9   would have to unanimously agree in order to find you get

10  guilty; do you understand?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  Do you understand that if there were a

13  trial you would have the right to be represented by counsel at

14  trial and at every all other stages of the proceedings and if

15  you couldn't afford one, an attorney would be provided to you

16  free of costs.

17          Do you understand this?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  All right.  Do you understand that if

20  there were a trial, you would have the right to see and to hear

21  all of the witnesses against you and your attorney could

22  cross-examine them?  You would have the right to have your

23  attorney object to the government's evidence and to offer

24  evidence on your behalf if you so desired.  You would have the

25  right to have witnesses required to come to court to testify in

1    your defense and you would have the right yourself to testify

2    but you would not be required to testify.

3              Do you understand all of that?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  Do you understand that if there were a

6    trial and you decided not to testify, no adverse inference

7    could be drawn against you based on your decision not to

8    testify?  And by that I mean the jury would be told that it

9    could not assume you wouldn't testify because you were guilty

10   or because you had something to hide.

11             Do you understand that?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  And do you understand that if you were

14   convicted at trial you would have the right to appeal the jury

15   verdict?

16             THE DEFENDANT:  I understand.

17             THE COURT:  Do you understand each and every one of

18   these rights that I have just outlined for you?

19             THE DEFENDANT:  Yes, I do, your Honor.

20             THE COURT:  Do you have any questions about these

21   rights?

22             THE DEFENDANT:  I have no questions.

23             THE COURT:  Do you need to speak with your attorneys?

24             THE DEFENDANT:  Nope.

25             THE COURT:  All right.  Do you understand that by

M9NAASTOP                    Plea

1   entering a plea of guilty today you will be giving up each and

2   every one of these rights; you will be wavering these rights?

3            THE DEFENDANT:  I understand.

4            THE COURT:  Do you understand that you will be waiving

5   any possible claim that your Constitutional rights may have

6   been violated and you will not have a trial?

7            Do you understand that?

8            THE DEFENDANT:  I understand, your Honor.

9            THE COURT:  Do you understand that by entering a plea

10  of guilty you will also have to give up your right not to

11  incriminate yourself because in a few moments I will ask you

12  questions about what you did in order to satisfy myself that

13  you are guilty as charged and you will have to admit and

14  acknowledge your guilt.

15           Do you understand that?

16           THE DEFENDANT:  I understand, your Honor.

17           THE COURT:  All right.  Do you understand that you can

18  change your mind right now and refuse to enter a plea of

19  guilty?

20           THE DEFENDANT:  Yes, your Honor.

21           THE COURT:  Do you understand that you do not have to

22  enter this plea if for any reason you do not want to do so?

23           Do you understand this fully?

24           THE DEFENDANT:  I understand, your Honor.

25           THE COURT:  All right.  Do you, Mr. Stone, have a copy

M9NAASTOP                    Plea

1     of the information containing the charge against you?

2              THE DEFENDANT:  Yes, I have a copy.

3              THE COURT:  Have you read it?

4              THE DEFENDANT:  I have read it.

5              Mr. Stone, have you discussed it with your lawyers?

6              THE DEFENDANT:  We have discussed it.

7              THE COURT:  Have you had full time to review it with

8     them and to ask any questions and talk to them about possible

9     consequences of the charges against you?

10             THE DEFENDANT:  Yes, I have, your Honor.

11             THE COURT:  I can read that information aloud now in

12    open court if you wish me to do so or you can waive public

13    reading.

14             Do you need me to read that aloud to you?

15             THE DEFENDANT:  I waive it, your Honor.

16             THE COURT:  All right.  You don't need me to read it

17    aloud.

18             THE DEFENDANT:  I do not need you to read it.

19             THE COURT:  I am going to provisionally enter a plea

20    of not guilty but it's my understanding that when we get to

21    further on in this proceeding you wish to change your plea, but

22    for the time being I will provisionally enter a plea of not

23    guilty to the charge in the information.

24             You are charged in Count One of the information with

25    securities fraud in violation of Title 15 U.S.C. Section 78J(b)

M9NAASTOP                    Plea

1   and 78FF, Title 17 Code of Federal Regulations, Section

2   240.10-B and Title 18 U.S.C. Section 2.

3           Do you understand this?

4           THE DEFENDANT:  I understand, your Honor.

5           THE COURT:  All right.  And pursuant to the plea

6   agreement, I am told the government will accept a plea of

7   guilty to that Count One; is that your understanding?

8           THE DEFENDANT:  It's my understanding.

9           THE COURT:  All right.  Let me ask then, counsel for

10  the government, Mr. Thomas, would you, please, state for the

11  record the elements of the securities fraud offense for which

12  Mr. Stone has been charged in Count One of information.

13          MR. THOMAS:  Yes, your Honor.

14          Were the government to proceed to trial it would have

15  to prove three elements beyond a reasonable doubt.

16          First, that in connection with the purchase or sale of

17  security the defendant employed a device, scheme or artifice to

18  defraud.

19          Second, the defendant acted willfully with the intent

20  to defraud, deceive or manipulate.

21          Third, that the defendant knowingly used or caused to

22  be used any means or instruments of transportation or

23  communication in interstate commerce or the use of the mails or

24  any facility of any national securities exchange in furtherance

25  of the fraudulent conduct.

1         Additionally, the government would also be required to

2    prove venue was proper by a preponderance of the evidence.

3         THE COURT:  All right.  Mr. Stone, do you understand

4    that the government would have to prove each and every part or

5    element as just outlined by counsel with respect to Count One

6    beyond a reasonable doubt if you were to go to trial?

7         THE DEFENDANT:  I understand, your Honor.

8         THE COURT:  Do you understand the matters that the

9    government would have to prove if you were to go to trial?

10        THE DEFENDANT:  Yes, I do.

11        THE COURT:  All right.  Do you understand that -- let

12   me talk about the penalty for the charge to which you told me

13   you wish to enter a plea of guilty.

14        Do you understand that the maximum possible term of

15   imprisonment for the offense in Count One to which you are

16   pleading guilty has a term of imprisonment of 20 years?

17        THE DEFENDANT:  Yes, I understand, your Honor.

18        THE COURT:  Do you understand the Count One can also

19   include a maximum term of supervised release after you're

20   released from prison of three years?

21        THE DEFENDANT:  Yes, your Honor.

22        THE COURT:  And in addition to these restrictions on

23   your liberty, do you understand that the maximum possible

24   punishment for Count One can also include certain financial

25   penalties?

M9NAASTOP                    Plea

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  Do you understand that the maximum fine

3     allowed for Count One is $5,000,000 or twice the gross

4     pecuniary gain relating to the offense and twice the loss to

5     persons other than yourself as a result of the offense,

6     whichever is greater; do you understand that?

7          THE DEFENDANT:  Yes, I do, your Honor.

8          THE COURT:  Do you understand that the Court must also

9     impose a mandatory special assessment in the amount of $100

10    which is payable immediately at the time of sentencing?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  And do you understand that the Court must

13    also order you to pay restitution to any victims of the

14    offense?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  Do you understand all of that?

17         THE DEFENDANT:  Yes, I understand.

18         THE COURT:  All right.  Do you understand that as part

19    of your plea agreement you have agreed to forfeit to the United

20    States certain property and a sum of money representing

21    proceeds traceable to the commission of the offense in Count

22    One to which you tell me you intend to plead guilty?

23         THE DEFENDANT:  Yes, I understand, your Honor.

24         THE COURT:  All right.  I have been provided a copy of

25    a proposed preliminary order of forfeiture as to specific

M9NAASTOP                    Plea

```
 1   property and money judgment.
 2           Counsel, do you have that there?
 3           MS. MONAGHAN:  Yes, your Honor.
 4           THE COURT:  All right.  Have you reviewed that?
 5           MS. MONAGHAN:  We have.
 6           THE COURT:  And you've reviewed, Mr. Stone, that
 7   proposed preliminary order of forfeiture with your lawyers?
 8           THE DEFENDANT:  Yes, we have.
 9           THE COURT:  And you consent to the terms contained in
10   that forfeiture order?
11           THE DEFENDANT:  I consent.
12           THE COURT:  All right.  And do you understand that --
13   we'll talk more about it in a moment -- but you understand that
14   the forfeiture amount set forth in that order will not reduce
15   any fine, restitution, cost of imprisonment or any other
16   penalty that the Court might impose?
17           THE DEFENDANT:  I understand.
18           THE COURT:  All right.  I want to give you some
19   information, but before I do that I might as well for the
20   record, there also is attached to the plea agreement a proposed
21   consent order of restitution.
22           Correct?
23           MR. THOMAS:  That's correct, your Honor.
24           THE COURT:  All right.  Mr. Monaghan, have you
25   reviewed that proposed order?
```

M9NAASTOP                    Plea

1            MS. MONAGHAN:  Yes, we have, your Honor.

2            THE COURT:  All right.  Mr. Stone, have you reviewed

3    it with your counsel?

4            THE DEFENDANT:  Yes, I have.

5            THE COURT:  Mr. Monaghan, do you consent to the terms

6    of that proposed order of restitution?

7            MS. MONAGHAN:  Yes, your Honor.

8            THE COURT:  Mr. Stone, you are consenting as well?

9            THE DEFENDANT:  I also consent.

10           THE COURT:  Okay.  All right.  Let me talk to you now

11   about the supervised release aspect of the potential penalty

12   that you face.  I mentioned it to you a few moments ago but I

13   want to verify that you understand the supervised release

14   aspects.

15           "Supervised release" means that you would be subject

16   to monitoring after you are released from prison.  Certain

17   terms and conditions will be imposed by the Court.  And if you

18   violate any of those set terms and conditions, you could be

19   reimprisoned without a jury trial.

20           Do you understand that?

21           THE DEFENDANT:  I understand, your Honor.

22           THE COURT:  And if you are on supervised release and

23   do not comply with any set terms and conditions, you can be

24   returned to prison for up to three years and you will get no

25   credit for time that you spent in prison as a result of your

M9NAASTOP                    Plea

1    sentence and you will get no credit for any time that you were

2    on supervised release prior to the violation.

3              Do you understand that?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  You should also understand there is no

6    parole in the federal system.  If you are sentenced to prison

7    you will not be released early on parole.

8              Do you understand that?

9              THE DEFENDANT:  Yes, I understand.

10             THE COURT:  Having said that, there is a limited

11   opportunity for you to earn credit for good behavior but you

12   would have to serve at least 85 percent of the time to which

13   you are sentenced.  There might or might not be other

14   opportunities for other release under a piece of legislation

15   known as the First Step Act.

16             Do you understand all of this?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  And you have had full opportunity to

19   discuss it with your lawyers?

20             THE DEFENDANT:  I have, your Honor.

21             THE COURT:  Do you understand that if I accept your

22   guilty plea and adjudge you guilty, that adjudication may

23   deprive you of certain valuable civil rights.

24             Do you understand that?

25             THE DEFENDANT:  I understand, your Honor.

M9NAASTOP                    Plea

1          THE COURT:  Do you understand that those civil rights

2     which you may lose include the right to vote, the right to hold

3     public office, the right to serve on a jury and the right to

4     possess any kind of firearm if you currently have or could

5     otherwise attain such rights; do you understand that?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  All right.  You told me that you're a

8     United States citizen.  For the record though, I want to make

9     clear that if for any reason that should turn out not to be

10    true, entering a plea of guilty could have adverse affects on

11    your immigration status and it could include further detention

12    or removal or deportation from the United States.

13         So, let me ask you, did you discuss your immigration

14    situation and possible immigration consequences of your plea

15    with your lawyers?

16         THE DEFENDANT:  Yes, I have, your Honor.

17         THE COURT:  All right.  Let me talk to you now about

18    something known as the sentencing guidelines.  Under current

19    law there are certain guidelines known as is the sentencing

20    guidelines that I as a judge must consider in determining your

21    sentence.

22         Have you spoken your lawyers about the sentencing

23    guidelines?

24         THE DEFENDANT:  Yes, we have discussed sentencing

25    guidelines.

1          THE COURT:  Do you understand that in addition to

2    considering the sentencing guidelines in imposing sentence, I

3    must consider various additional factors that are set forth in

4    statute at 18 U.S.C. Section 3553; do you understand that?

5          THE DEFENDANT:  I understand.

6          THE COURT:  Do you understand that the Court has

7    discretion while taking the guidelines into account to sentence

8    you to any period of imprisonment up to 20 years?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  Do you understand that even though the

11    plea agreement includes an agreed or stipulated guidelines,

12    sentencing guideline calculation, I cannot determine what your

13    sentence will be until after a presentence report is prepared

14    by the probation department?  When that is prepared you and

15    your lawyers, government and its lawyers will have is a chance

16    to review that report and to challenge any of the facts

17    reported by the probation office.

18          Do you understand that?

19          THE DEFENDANT:  I understand, your Honor.

20          THE COURT:  All right.  Now, according to the plea

21    agreement, you have agreed with the government that the

22    guidelines range appropriate to the offense in Counts One to

23    which you tell me you intend to plead guilty is 46 to 57 months

24    of incarceration.

25          Is that consistent with your understanding?

1          THE DEFENDANT:  That is my understanding, yes.

2          THE COURT:  And you have also agreed that the

3     applicable fine range with respect to the count to which you

4     tell me you intend to plead guilty is $20,000 to $5 million; is

5     that your understanding?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Now, do you understand that that

8     stipulation or agreement that you've entered into with the

9     government does not bind the Court or the probation department

10    as to the facts on which its based how to apply the guidelines

11    to the facts and what an appropriate sentence will be in your

12    case; do you understand that?

13         THE DEFENDANT:  Yes, your Honor.

14         THE COURT:  Do you understand that I may decide to

15    impose a sentence that is outside the guidelines range?

16         THE DEFENDANT:  I understand, your Honor.

17         THE COURT:  Do you understand that in addition, as we

18    a just discussed, I must order restitution to any person or

19    entity injured as a result of your criminal conduct?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  Do you understand that if your lawyer or

22    anyone else has attempted to predict for you or to estimate

23    what your sentence will be, that estimate or prediction could

24    well be wrong?

25         THE DEFENDANT:  I understand, your Honor.

1          THE COURT:  No one, not even your lawyer or the

2     government can or should give you any assurance of what your

3     sentence will be since that sentence cannot be determined until

4     after the probation report that I've just mentioned to you is

5     completed and I have ruled on the challenges, if any, that you

6     make to that report and I have determined what the appropriate

7     sentence is; do you understand that?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Do you also fully understand that even if

10     your sentence is different from what your attorney or anyone

11     else told you it might be or if it's different from what you

12     expect or you might hope or if you're surprised or disappointed

13     by your sentence, if you plead guilty today you will be bound

14     to that plea and you will not be allowed to withdraw your plea

15     of guilty after today; do you understand that?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  Do you understand that even if the

18     government doesn't oppose or take a position on whatever

19     sentence your attorney asks me to impose as your sentence, I'm

20     obligated to impose whatever sentence I believe is appropriate

21     under the circumstances and the applicable law and you will

22     have no right to withdraw your plea of guilty; do you

23     understand that?

24          THE DEFENDANT:  I understand.

25          THE COURT:  Do you understand that you may have the

M9NAASTOP                    Plea

1   right to appeal your sentence under certain circumstances even

2   if your plea agreement provides that you're waiving your rights

3   to appeal; do you understand that?

4             THE DEFENDANT:  Yes, your Honor.

5             THE COURT:  Are you currently serving any sentence

6   either in the state or federal court system?

7             THE DEFENDANT:  I am not, your Honor.

8             THE COURT:  Are you currently being prosecuted for any

9   crime other than the one laid out in the information?

10            THE DEFENDANT:  No, your Honor.

11            THE COURT:  All right.  Let's turn to the plea

12   agreement and talk about that for a few moments.

13            As I say, I have been given a copy of a letter

14   agreement dated September 19, 2022.  We've marked this as

15   Government Exhibit One, it's a seven-page letter on the

16   letterhead of the United States Department of Justice, the

17   United States Attorney for the Southern District of New York,

18   addressed to your counsel and it references your case caption,

19   United States against David Stone.

20            Have you seen this document before today?

21            THE DEFENDANT:  Yes, I have, your Honor.

22            THE COURT:  Did you sign this letter agreement?

23            THE DEFENDANT:  Yes, I did, your Honor.

24            THE COURT:  Did you read the agreement before you

25   signed it?

M9NAASTOP                    Plea

1              THE DEFENDANT:  Yes, I did.

2              THE COURT:  Did you discuss it with your lawyers

3    before you signed it?

4              THE DEFENDANT:  We discussed it.

5              THE COURT:  Did your lawyers explain to you all of its

6    terms and conditions?

7              THE DEFENDANT:  They did, your Honor.

8              THE COURT:  Did you fully understand the agreement

9    before you signed it?

10             THE DEFENDANT:  Yes, I understood.

11             THE COURT:  Do you have any questions about the

12   agreement?

13             THE DEFENDANT:  No, your Honor.

14             THE COURT:  Do you need any time to discuss it now

15   with your lawyers before we proceed?

16             THE DEFENDANT:  No, your Honor.

17             THE COURT:  Do you understand that that agreement

18   provides that you are giving up your or waiving your right to

19   appeal or to litigate or challenge your sentence under Statute

20   28 U.S.C. Section 2255 and or 2241 if I sentence you within or

21   below the guidelines range set forth in the plea agreement; do

22   you understand that?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  Do you understand that you're under no

25   obligation to waive your right to appeal or to otherwise

 1    litigate your sentence?

 2              THE DEFENDANT:  I understand, your Honor.

 3              THE COURT:  Do you understand that your plea agreement

 4    provides that you are waiving any right to appeal or attack

 5    your conviction on the basis that the government hasn't

 6    provided discovery material, exculpatory material except

 7    information establishing factual innocence or any material to

 8    impeach the government's witnesses; do you understand that?

 9              THE DEFENDANT:  Yes, your Honor.

10              THE COURT:  Do you understand that you're under no

11    obligation to waive those rights?

12              THE DEFENDANT:  Yes, your Honor.

13              THE COURT:  In fact, your plea agreement provides that

14    in connection with your plea of guilty you in consultation with

15    counsel have chosen not to request discovery materials.

16              Do you understand that?

17              THE DEFENDANT:  Yes, your Honor.

18              THE COURT:  Do you understand that you're under no

19    obligation to waive your right to receive discovery materials

20    from the government?

21              THE DEFENDANT:  I understand, your Honor.

22              THE COURT:  All right.  You are waiving that right

23    freely and voluntarily?

24              THE DEFENDANT:  Yes.

25              THE COURT:  All right.  You understand that you are

1   under no obligation to waive your rights to appeal with respect

2   to the failure to provide discovery materials?

3           THE DEFENDANT:  Yes, your Honor.

4           THE COURT:  All right.  Do you understand that your

5   agreement provides that you will not move for a downward

6   departure under the sentencing guidelines or seek any

7   adjustment under the guidelines that's not described in the

8   plea agreement, but that you may argue for a lower sentence

9   under the general sentencing statute known as Section 3553(a)

10  that I mentioned to you earlier; do you understand that?

11          THE DEFENDANT:  I understand.

12          THE COURT:  Do you understand that you're under no

13  obligation to enter into such an agreement?

14          THE DEFENDANT:  I understand, your Honor.

15          THE COURT:  Do you understand that your plea agreement

16  provides that you are waiving any challenges to your guilty

17  plea, your conviction or your sentence based on any immigration

18  consequences of your plea regardless of any advice you may have

19  received from your lawyers about immigration or from anyone

20  else for that matter about such immigration consequences?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  Do you understand you're under no

23  obligation to make this waiver?

24          THE DEFENDANT:  I understand.

25          THE COURT:  Does this plea agreement that we've marked

M9NAASTOP                    Plea

1    as Government Exhibit One reflect accurately your complete and

2    total understanding of the entire agreement between you, the

3    government and the respective lawyers on each side?

4            THE DEFENDANT:  Yes, it does, your Honor.

5            THE COURT:  Is everything you understand about your

6    plea and your sentence up to this point obviously covered in

7    this agreement?

8            THE DEFENDANT:  Yes, your Honor.

9            THE COURT:  Has anything been left out?

10           THE DEFENDANT:  No, your Honor.

11           THE COURT:  All right.  Apart from ways contained in

12   this agreement, have any promises been made to you in order to

13   get you to plead guilty?

14           THE DEFENDANT:  No.

15           THE COURT:  Have you been threatened or coerced in any

16   way to plead guilty today?

17           THE DEFENDANT:  No, your Honor.

18           THE COURT:  Knowing all of what we've just discussed,

19   do you still wish to plead guilty pursuant to this agreement?

20           THE DEFENDANT:  Yes, I do, your Honor.

21           THE COURT:  All right.  Let me ask you, Mr. Monaghan,

22   do you know of any valid reason why your client would prevail

23   at trial or of any reason why your client should not be

24   permitted to plead guilty?

25           MS. MONAGHAN:  I do not, your Honor.

1          THE COURT:  All right.  Mr. Stone, at this time, I

2    told you earlier I would need you to tell me what you did in

3    order that makes you guilty -- I'm sorry -- of the offense

4    charged in Count One of the information.  So, at this point I

5    need you to tell me what it is you did that makes you guilty of

6    the crime.  I need you to tell me what you did, when you did

7    it, with whom you did it, bearing in mind the elements of the

8    offense that were laid out on the record earlier by counsel for

9    the government.

10          THE DEFENDANT:  Are you ready for me now?

11          THE COURT:  You may tell me what you did, yeah.

12          THE DEFENDANT:  I will.  From November 2020 to

13    April --

14          THE COURT:  Slowly, please.  We have a court reporter.

15          THE DEFENDANT:  From about November 2020 till April

16    2022, I deceptively and fraudulently accessed Motley Crue's

17    website.

18          THE COURT:  You have to slow down and speak more

19    clearly.

20          You accessed whose web --

21          THE DEFENDANT:  I deceptively and fraudulently

22    accessed Motley Crue's website using log-in credentials that

23    did not belong to me.  I access their site to access stock tips

24    in advance of them being published to their subscribers.  I

25    knew that these stock tips rightly moved the market and sought

M9NAASTOP                    Plea

1    to gain advantage by deceptively accessing them before they

2    published them to their subscribers.  I also distributed that

3    information to another person who with the intention that they

4    would use this information to trade in securities in advance of

5    their, Motley Crue's published stock tips.  We heyed over 50

6    successful trades this way.  I knew what I was doing was wrong

7    and illegal.

8              THE COURT:  All right.  Have you completed your

9    statement?

10             THE DEFENDANT:  Yes.

11             THE COURT:  All right.  And when you did this, where

12   were you located?

13             THE DEFENDANT:  I was located in various places in the

14   United States and overseas.

15             THE COURT:  Were you located at any times in the

16   Southern District of New York?

17             THE DEFENDANT:  Not during this timeframe, but the

18   trades I placed were on the New York Stock Exchange and the

19   NASDAQ.

20             THE COURT:  Okay.  And you did this using the

21   Internet?

22             THE DEFENDANT:  Yes.

23             THE COURT:  All right.  And when you did all of this,

24   you knew that what you were doing was wrong?

25             THE DEFENDANT:  Yes, I did.

M9NAASTOP                    Plea

1              THE COURT:  You knew it was illegal?

2              THE DEFENDANT:  I knew it was illegal.

3              THE COURT:  All right.  Let me ask you, have you

4     reviewed with your counsel the forfeiture allegations that are

5     set forth in the information?

6              THE DEFENDANT:  Yes, I have.

7              THE COURT:  Do you admit the forfeiture allegations

8     contained in the information?  Do you need a moment to review

9     them with counsel?

10             THE DEFENDANT:  I'm not quite sure.

11             THE COURT:  Why don't you, Mr. Monaghan, talk to

12    Mr. Stone about this.

13             MS. MONAGHAN:  Yes, your Honor.

14             (Pause)

15             THE DEFENDANT:  I admit those allegations, your Honor.

16             THE COURT:  All right.  Mr. Thomas, does the

17    government wish any further factual matter to be addressed with

18    Mr. Stone in connection with his plea allocution?

19             MR. THOMAS:  No, your Honor.

20             THE COURT:  All right.  Let me ask you, Mr. Thomas,

21    to, please, set forth on the record what evidence the

22    government would rely upon were this case to go to trial?

23             MR. THOMAS:  Yes, your Honor.  At trial the government

24    would be prepared to present the jury with a post-arrest

25    statement of Mr. Stone, conceding many of the same facts that

1    he addressed in court just now.  The government would also

2    introduce computer server logs and IP log information that

3    would establish that Mr. Stone's computing devices accessed

4    Motley Crue's server, including parts of the website that were

5    not intended for the public.

6         The government would also produce trading records that

7    would show that Mr. Stone used various brokerage accounts and

8    was connected to Mr. Stone similarly used brokerage account to

9    trade in the names of Motley Fool Picks before those picks were

10   announced to the public.  One of those brokerage accounts was

11   located in Manhattan, New York, your Honor.

12         THE COURT:  All right.  Let me ask you,

13   Mr. Monaghan -- I'll ask Mr. Stone directly, do you agree one

14   of the accounts that you used to trade was located here in New

15   York in Manhattan?

16         THE DEFENDANT:  I understand that the trading occurred

17   on the New York Stock Exchange.  Whether or not the brokerage

18   account has an office in Manhattan, I cannot say, but I don't

19   think it matters.

20         THE COURT:  I don't think it does either, but thank

21   you.

22         Let me ask the government, is there an adequate

23   factual basis to support a plea of guilty to the charge in

24   Count One?

25         MR. THOMAS:  Yes, your Honor.

M9NAASTOP                    Plea

1          THE COURT:  Mr. Monaghan, is there an adequate factual

2     basis to support a plea of guilty to the charge contained in

3     count one of the information?

4          MS. MONAGHAN:  Yes, your Honor.

5          Thank you.

6          THE COURT:  All right.  Mr. Stone, now that we've

7     discussed your plea agreement and the possible penalty of the

8     crime to which you tell me you wish to enter a plea of guilty,

9     we can turn to entry of a plea.

10          Do you wish to change your plea to guilty?

11          THE DEFENDANT:  Yes, I do, your Honor.

12          THE COURT:  All right then, let me ask you to state

13     how do you plead to Count One of the information?

14          THE DEFENDANT:  I plead guilty.

15          THE COURT:  Are you pleading guilty because you are in

16     fact guilty?

17          THE DEFENDANT:  Yes, I am, your Honor.

18          THE COURT:  Are you pleading guilty voluntarily?

19          THE DEFENDANT:  Yes, I am.

20          THE COURT:  Are you doing so of your own free will?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  Have you been threatened, coerced in any

23     way in order to get you to plead guilty?

24          THE DEFENDANT:  No, your Honor.

25          THE COURT:  All right.  Mr. Monaghan, are there any

M9NAASTOP                    Plea

1    other questions that you believe I should ask Mr. Stone in

2    connection with this plea?

3              MS. MONAGHAN:  No, your Honor.  I will confirm I

4    believe his plea is knowing and voluntary.

5              THE COURT:  Thank you.

6              All right.  Mr. Thomas, are there any other questions

7    you believe I should ask Mr. Stone?

8              MR. THOMAS:  No, your Honor.

9              THE COURT:  All right.  Mr. Stone, would you please

10   stand.

11             You have acknowledged that you are in fact guilty as

12   charged in Count One of the information for securities fraud,

13   because I am satisfied that you know your rights including your

14   right to go to trial and you are waiving your rights

15   voluntarily and that you're aware of the consequences of the

16   the your plea, including the sentence that may be imposed, I find

17   that your plea is entered knowingly and voluntarily and is

18   supported by an independent basis in fact containing each of

19   the essential elements of the offense.

20             I therefore accept your guilty plea and I enter a

21   judgment of guilty of Count One of the information charging you

22   with securities fraud.  You may be seated.

23             All right.  I want to talk to you now, Mr. Stone,

24   about the process going forward from today.  I mentioned

25   earlier that the probation department needs to prepare a

1    presence report which will assist me in determining what an

2    appropriate sentence is for the offense to which you have just

3    been adjudicated guilty.  In order to prepare that report, the

4    probation office needs to interview you.  It is very important

5    that the information that you give the probation officer be

6    truthful and it be accurate and that you cooperate with your

7    probation officer in connection with the preparation of that

8    report.  As I've said, that report is very important to me and

9    my decision about what your sentence will be.

10           All right.  Once that report is prepared, you and your

11   lawyer and also the government and its lawyer will have the

12   right to examine the report.  You can object to it.  You can

13   challenge any factual assertions made therein.  You can comment

14   on it.  At times the probation office will revise a presentence

15   report in order to reflect or react to comments received from a

16   defendant and or counsel.

17           Once finalized, that presentence report is provided to

18   me.  And as I say, it's very important to me in determining

19   what your sentence will be.  Before I impose sentence you will

20   have the opportunity to address the Court.  Although, you are

21   not obligated to do so.

22           Is there any reason in the opinion of counsel why I

23   should the direct that a presentence report be prepared?

24           MR. THOMAS:  No, your Honor.

25           MS. MONAGHAN:  No, your Honor.

M9NAASTOP                    Plea

1          THE COURT:  Mr. Monaghan, I assume that you wish to be

2     present at any interview by the probation office in connection

3     with preparation of the report?

4          MS. MONAGHAN:  Yes, please, your Honor.

5          THE COURT:  All right.  I therefore order that no

6     interview take place unless counsel is present.  I would

7     request, Mr. Monaghan, that you reach out to probation and

8     arrange for the interview to take place within the next 14

9     days, please.

10          MS. MONAGHAN:  I certainly will.  Thank you.

11          THE COURT:  Mr. Thomas, I would ask that you please

12     provide the statement of facts to the probation office within

13     the next 14 days as well.

14          MR. THOMAS:  Yes, your Honor.

15          THE COURT:  All right.  Once you receive the draft of

16     the presentence report, counsel is reminded of your obligation

17     to timely give any notice of any comments or objections to the

18     probation office.  Courtesy copies will be provided to chambers

19     once that report is finalized.

20          Defense submissions in connection with sentencing are

21     due two weeks before the sentencing date which we'll turn to in

22     a moment.

23          Government submissions are due one week before the

24     sentencing date.

25          Ms. Dempsey, do we have a proposed date?

M9NAASTOP                    Plea

1          All right.  February 14th, we will have sentencing in

2      this case, two p.m.

3          Any objection?

4          MR. THOMAS:  No, your Honor.

5          MS. MONAGHAN:  No.

6          Thank you, your Honor.

7          THE COURT:  All right.  So, Mr. Stone, I just remind

8      you again about how critically important it is that you be

9      truthful with the probation office and the Court.  Failure to

10     be truthful and cooperative in connection with the remainder of

11     proceedings, including preparation of presentence report could

12     have an adverse effect on your sentence and it may subject you

13     to prosecution if you are untruthful.

14         Specifically, as well, I am reserving the right to

15     deny you the two-level reduction in the calculation of your

16     sentencing guideline range and your particular offense level

17     for acceptance of responsibilities if you do not cooperate

18     fully with the probation office in connection with preparation

19     of report.

20         Do you understand that?

21         THE DEFENDANT:  I understand, your Honor.

22         THE COURT:  All right.  So, Mr. Stone is out on bail,

23     correct?

24         MR. THOMAS:  He is, your Honor.

25         THE COURT:  Is there any application with respect to

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

M9NAASTOP                    Plea

1    bail?

2              MR. THOMAS:  No, your Honor.  The government just asks

3    the Court continue bail conditions as set.

4              THE COURT:  All right.  All of the bail conditions,

5    Mr. Stone, that are now in place, remain in effect between

6    today and the day of your sentencing.  I remind you, you need

7    to be in this courtroom at the time and date we've set for

8    sentencing, February 14th at two p.m.

9              If you do not appear, you're guilty of a separate

10   crime and you may be subject to a fine or a prison term in

11   addition to whatever sentence you may receive for the crime for

12   which you have just been adjudicated guilty.

13             Do you understand that?

14             THE DEFENDANT:  Understand, your Honor.

15             THE COURT:  All right.  I just request the parties,

16   please, order a copy of the transcript of today's plea hearing.

17   It should be placed on the docket.  And I do review that

18   carefully prior to any sentencing.

19             All right.  Is there any further that we should

20   discuss today?

21             MR. THOMAS:  Not from the government.  Thank you.

22             MS. MONAGHAN:  No.  Thank you very much, your Honor.

23             THE COURT:  All right.  Then I thank our court

24   reporter very much, and we are adjourned.

25             (Adjourned)